UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>GEORGE HARRISON,<br>    Defendant. | CRIMINAL ACTION NO. 5:19-143-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Defendant George Harrison has renewed a motion (DE 143) to strike the government's information filed pursuant to 21 U.S.C. § 851.

The Court denied as premature Harrison's first motion to strike the § 851 notice because, at the time the motion was filed, Harrison had not yet been convicted of any crime. (DE 108, Order.)

After the Court's order, a jury found Harrison guilty of three counts of distributing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, one count of possessing with intent to distribute 500 grams or more of such a substance, and with being a felon in possession of a firearm. Accordingly, Harrison has now renewed the motion to strike the §851 notice, and the Court conducted a hearing on the motion to resolve the issue prior to sentencing.

The conviction at issue is the conviction for possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable mount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The mandatory minimum sentence for that charge is normally 10 years, but if the defendant has a prior conviction for a

"serious drug felony or serious violent felony," the mandatory minimum is 15 years. 21 U.S.C. § 841(b)(1)(A)(viii).

The United States filed an information as required by 21 U.S.C. § 851. (DE 31, Notice.) The information asserts that Harrison has a prior serious violent felony conviction, thus subjecting him to the 15-year mandatory minimum sentence. In 1987, Harrison was convicted in Kentucky state court of complicity to commit murder. Harrison argues that this conviction is not a "serious violent felony" for purposes of the enhanced mandatory minimum sentence set forth in § 841(b)(1).

The relevant definition of "serious violent felony" is an offense described in 18 U.S.C. § 3559(c)(2) "for which the offender served a term of imprisonment of more than 12 months." 21 U.S.C. § 802(58). There is no dispute that Harrison served more than 12 months for the complicity charge. The issue is whether complicity to commit murder is an offense described in § 3559(c)(2).

That statute defines a serious violent felony to consist of 1) a list of enumerated offenses; 2) "any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another"; 3) an offense punishable by a maximum prison term of at least 10 years and that "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." *See* 18 U.S.C. § 3559(c)(2)(F). The first clause has come to be called the "enumerated-offense clause"; the second the "elements clause"; and the third the "residual clause."

The Supreme Court has held that similarly worded residual clauses in three other federal statutes are unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591 (2015) (the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C.

2

§ 924(e)(2)(B)(ii)); *United States v. Davis*, 139 S. Ct. 2319 (2019) (18 U.S.C. § 924(c)'s residual clause); *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) (18 U.S.C. § 16). The Government does not argue that Harrison's complicity conviction qualifies as a serious felony under the residual clause of § 3559(c)(2)(F). Accordingly, this Court need not address whether it is unconstitutionally vague.

The government does argue, however, that the complicity conviction qualifies as a serious violent felony under both the enumerated offense clause and the elements clause.

**I. Elements Clause**

As to the elements clause, there is no dispute that Harrison's prior conviction for complicity to commit murder was punishable by a maximum term of imprisonment of at least ten years. (DE 143, Mem. at 2, n.2.) The issue is whether the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). To make that determination, the Court must apply the "categorical approach." *United States v. Ruska*, 926 F.3d 309, 311 (6th Cir. 2019). "That means we ask whether the conviction—disregarding its underlying facts—necessarily has 'the use, attempted use, or threatened use of physical force' as an element of the offense.'" *Id*. The Court must presume that Harrison was convicted for the "least of the acts" criminalized by the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013).

**A. Mental State**

Before addressing the use-of-force issue, however, the Court must determine the least culpable mental state required for a complicity-to-murder conviction in Kentucky. This is because the Supreme Court has recently determined that the definition of violent felony under the ACCA's elements clause, 18 U.S.C. § 924(e)(2)(B)(i), does not include crimes that require "only a mens rea of recklessness – a less culpable mental state than purpose or

3

knowledge." *Borden v. United States*, 141 S. Ct. 1817, 1821-22 (2021). The Court determined "use of force denotes volitional conduct." *Id*. at 1826. And "the phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id*. at 1825.

The Court explained that the clause includes purposeful and knowing acts because "[p]urpose and knowledge are the most culpable levels in the criminal law's mental-state 'hierarchy.'" *Id*. at 1823. "A person acts purposefully when he 'consciously desires' a particular result." *Id*. "He acts knowingly when he is aware that a result is practically certain to follow from his conduct, whatever his affirmative desire." *Id*. (citation, brackets, and internal quotations omitted.) As to a defendant's reckless use of force, however, the Court found that such conduct is "not opposed to or directed at another" as the elements clause requires. *Id*. at 1827.

Like the elements clause of the ACCA, the elements clause of §3559(c)(2)(F) defines a violent felony as an offense requiring the "use of physical force against the person of another." Thus, pursuant to *Borden*, a serious violent felony for purposes of §3559(c)(2)(F) includes "purposeful and knowing acts, but excludes reckless conduct." *Id*. at 1826. Accordingly, if a person need only act with a mens rea of recklessness for a conviction for complicity to commit murder under Kentucky law, that crime cannot constitute a serious violent felony under §3559(c)(2)(F).

Kentucky's criminal complicity statute provides as follows:

> (1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
>   (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
>   (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or

4

>   (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.
>
> (2) When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:
>   (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or
>   (b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or
>   (c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.

Ky. Rev. Stat. Ann. § 502.020.

The Kentucky Supreme Court has explained that the two subsections of the complicity statute set forth above describe "two separate and distinct theories" under which an accomplice can be found guilty for a crime committed by another person, who is the principal actor. *Tharp v. Com.*, 40 S.W.3d 356, 360 (Ky. 2000). Subsection 1 applies when "the principal actor's *conduct* constitutes the criminal offense." *Id*. Subsection 2 applies "when the *result* of the principal's conduct constitutes the criminal offense." *Id*.

The primary distinction between the two subsections is that an accomplice can be guilty of complicity to the principal actor's commission of a crime under subsection (1) "only if he/she possesses the *intent* that the principal actor commit the criminal act." *Rogers v. Com.*, 315 S.W.3d 303, 310 (Ky. 2010); *See also* Ky. Rev. Stat. § 502.020, 1974 Kentucky Crime Commission/LRC Commentary ("To be guilty under subsection (1) for a crime committed by another, a defendant must have specifically intended to promote or facilitate the commission of that offense. This means that the statute is not applicable to a person acting with a culpable mental state other than 'intentionally.'") Thus, a conviction for complicity to commit murder under this subsection requires that the accomplice intend that

a murder be committed. Such a conviction is not precluded from qualifying as a serious violent felony under *Borden*.

In contrast, an accomplice can be liable under subsection (2) for the *result* of the principal actor's actions, even if the accomplice did not intend for the principal's act to cause the criminal result. *Rogers*, 315 S.W3d at 310. "The most common examples of offenses having a prohibited result are homicide, with the death of another as the prohibited result, and assault, with the bodily injury of another as the prohibited result." *Tharp*, 40 S.W.3d at 360–61.

"[T]his provision does not require for liability that a defendant intended to promote or facilitate the commission of an offense. It is required only that a defendant act with the kind of culpability sufficient for commission of the offense charged." Ky. Rev. Stat. § 502.020, 1974 Kentucky Crime Commission/LRC Commentary (emphasis added), "For example, 'recklessness' would be required for complicity in reckless homicide, 'wantonness' for complicity in second degree manslaughter, 'wantonness with extreme indifference to the value of human life' for complicity in wanton murder, and 'intention' for intentional murder." Robert G. Lawson & William H. Fortune, Kentucky Criminal Law, § 3-3(c)(2) (1998).

Harrison was charged with complicity to commit murder. Neither of the parties nor the United States probation officer has been able to determine which of the complicity subsections under which he was convicted. If his conviction fell under subsection (1), then he was determined to have intended that the principal actor commit murder. Such a conviction is not precluded from qualifying as a serious violent felony under *Borden*.

In contrast, if Harrison was convicted of complicity to commit murder under subsection (2), he could have been determined to have acted with any mens rea sufficient for a murder

6

conviction under Kentucky law. There are two kinds of mental states that suffice for a murder charge under Kentucky law. The first requires "an intent to cause the death of another." Ky. Rev. Stat. Ann. § 507.020(1)(a). *Borden* would not preclude this kind of murder charge from qualifying as a serious violent felony. Nor would it prevent a conviction for complicity to commit intentional murder from qualifying as a serious violent felony because such a conviction requires that the defendant intend that a murder occur.

The second kind of conduct that suffices for a murder charge under Kentucky law requires that the defendant "wantonly engage[] in conduct which creates a grave risk of death to another person and thereby cause[] the death of another person." Ky. Rev. Stat. § 507.020(1)(a), (b). The kind of wanton conduct sufficient for a murder charge consists of four elements. The first three match the definition of reckless conduct that formed the basis for the *Borden* decision. Those three elements are 1) "the conduct in question must have involved a substantial and unjustifiable risk of death to human life;" 2) "the defendant, in causing the death in question, must have consciously disregarded that risk," and 3)" his disregard must have constituted 'a gross deviation from the standard of conduct that a reasonable person would [have observed] in the situation.'" Ky. Rev. Stat. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary. *Borden* explains that "[a] person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." *Borden*, 141 S. Ct. at1824 (quoting Model Penal Code § 2.02(2)(c)).

A conviction for wanton murder under Kentucky law, however, requires a fourth element: "circumstances manifesting extreme indifference to human life." Ky. Rev. Stat. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary. Thus, a defendant can be guilty of complicity to murder under Ky. Rev. Stat.§ 502.020(2) "if there is evidence that he

7

or she actively participated in the actions of the principal without the specific intent that those actions would result in the victim's death, but with aggravated wantonness, *i.e.*, wantonness creating a grave risk of death under circumstances manifesting an extreme indifference to human life." *Beaumont v. Com.*, 295 S.W.3d 60, 70 (Ky. 2009) (citation, internal ellipses, and quotations omitted). In the commentary to the complicity statute, the Kentucky Crime Commission and LRC provide the following example: "D agrees with another person to commit an armed robbery. During the course of this robbery a third person is killed by D's cohort. . . If, from all of the circumstances, [the jurors] find that he acted with wantonness manifesting extreme indifference to human life, he is guilty under [Ky. Rev. Stat. §] 507.020(1)(b) of murder."

Thus, in the "mental-state hierarchy" discussed in *Borden*, the wanton conduct required for a murder charge under Kentucky law falls above recklessness. *Borden*, 141 S. Ct. at 1823. In *Borden*, the Supreme Court explicitly declined to address whether crimes that require "mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge" fall within the elements clause. *Borden*, 141 S.Ct. at 1825, n.4.

Under Kentucky law, however, wanton murder requires a mental state that is as culpable as intent. Thus, *Borden* does not preclude it from qualifying as a violent felony under the elements clause. The commentary to the Kentucky murder statute explains that "wanton homicide" under circumstances manifesting an extreme indifference to human life "cannot fairly be distinguished" from intentional homicide. Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary (citing Model Penal Code, § 201.2, Comment 2)). The inclusion of a murder charge for wanton conduct "manifests a judgment that there is a type of homicide that should be treated as murder even though the actor had no conscious desire to cause the victim's death." *Id*. The requirement of "circumstances

manifesting extreme indifference to human life" permits wanton conduct to be "assimilated to intention." *Id*. (brackets deleted). The Kentucky Supreme Court has determined that, "[t]o punish wanton conduct as murder, it must be conduct as culpable as intentional murder." *Brown v. Com.*, 975 S.W.2d 922, 923 (Ky. 1998). "[A] conviction of wanton murder is reserved exclusively for offenders who manifest virtually no concern for the value of human life." *Johnson v. Com.*, 885 S.W.2d 951, 952 (Ky. 1994).

The commentary to Kentucky's murder statute explains that, "typical of conduct contemplated for inclusion in 'wanton' murder is: shooting into a crowd, an occupied building or an occupied automobile; placing a time bomb in a public place; or derailing a speeding locomotive." Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary. The mental state required for these actions is at least equal in culpability to the knowing conduct discussed in *Borden*, which requires that the actor be aware that death is "practically certain to follow from his conduct." *Borden*, 141 S. Ct. at 1823. Further, the mens rea required for these examples of wanton murder is at least as culpable as that required for the example of knowing conduct discussed in *Borden*: "a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over . . . Although he would prefer a clear road, he too drives his car straight at a known victim." *Borden,* 141 S. Ct. at 1826–27. In contrast, the mens rea required for shooting into a crowd or placing a time bomb in a public place is more culpable than the *Borden* example of reckless conduct: "a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see." *Id*. at 1827.

Harrison argues that a person can be guilty of wanton murder under Kentucky law for "unintentional vehicular homicide." He further argues that the mental state required for such a conviction is equal to recklessness. Harrison cites no cases in which a person has

9

been convicted of complicity to commit unintentional vehicular homicide, and the Court has located none. Thus, the mens rea required for unintentional vehicular homicide would seem to be irrelevant to the least culpable mens rea required for a complicity-to-murder conviction.

Even if it is relevant, by its plain language, the Kentucky murder statute applies when a person operates a vehicle "under circumstances manifesting extreme indifference to human life" and "wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." Ky. Rev. Stat. § 507.020(1)(b). As discussed, this is a more culpable mental state than the recklessness described in *Borden*. In *Brown v. Com.*, 174 S.W.3d 421, 425 (Ky. 2005), the Kentucky Supreme Court surveyed the kind of conduct that suffices for wanton murder in cases of unintentional vehicular homicides:

> In *Hamilton v. Commonwealth*, 560 S.W.2d 539 (Ky.1977), we held that the evidence was sufficient where the defendant, while under the influence of alcohol, drove his vehicle at a rate exceeding the speed limit and entered an intersection against a red light. *Id.* at 543. In *Walden v. Commonwealth*, 805 S.W.2d 102 (Ky.1991), *overruled on other grounds by Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky.1996), we upheld a wanton murder conviction where the defendant lost control of his vehicle and crossed the center line while operating his vehicle while under the influence of alcohol and at a high rate of speed. *Id.* at 105. In *Estep v. Commonwealth*, 957 S.W.2d 191 (Ky.1997), we held that the evidence was sufficient where the defendant operated a motor vehicle at a high rate of speed after ingesting five different prescription drugs, one of which had debilitating effects of which she was aware, crossed the center line to pass another automobile in a no-passing zone, failed to return her vehicle to the proper lane, and caused a fatal collision. *Id.* at 193. In *Love v. Commonwealth*, 55 S.W.3d 816 (Ky.2001), we held the evidence sufficient where the defendant was speeding, was intoxicated, and did not slow down or attempt to stop upon seeing a police car blocking the road but attempted to swerve around the police car while traveling a reported seventy to ninety miles per hour. *Id.* at 827. In *Cook v. Commonwealth*, 129 S.W.3d 351 (Ky.2004), we held

> the evidence sufficient where the defendant was intoxicated, admitted he was aware of the risk of driving while intoxicated, and lost control of his vehicle while operating it at a high rate of speed because he wanted to show his passenger "what his car had." *Id*. at 362–63.

*Brown*, 174 S.W.3d at 426.

The court recognized that, in each case, the defendant was impaired by an intoxicating substance. Nevertheless, it held that intoxication was "not a prerequisite to a finding of extreme indifference to human life in a vehicular homicide case." *Id*. The court pointed to the typical examples of such conduct discussed in the commentary to the murder statute (shooting into a crowd or occupied building, etc.). *Id*. It explained that:

> Setting this conduct apart from behavior that would not warrant an unintentional murder conviction are the following characteristics: (i) homicidal risk that is exceptionally high; (ii) circumstances known to the actor that clearly show awareness of the magnitude of the risk; and (iii) minimal or non-existent social utility in the conduct. Such conduct plainly reflects more than mere awareness and conscious disregard of a substantial and unjustifiable risk of death. It manifests a high disregard for life and evinces what the common law chose to call a depravity of mind or heart.

*Id*. at 426-27 (quoting *Brown v. Commonwealth*, 975 S.W.2d at 924).

Accordingly, to the extent that a person can be convicted of complicity to commit unintentional vehicular homicide under Kentucky law, the mens rea required for that crime is higher than recklessness and is "as culpable as intentional murder." *Brown*, 975 S.W.2d at 923. Thus, a conviction for complicity to commit unintentional vehicular homicide is not precluded by *Borden* from qualifying as a serious violent felony under the elements clause.

### B. Use-of-force Element

The next issue is whether complicity to commit wanton murder "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). As discussed, to make that determination, the Court must apply

11

the "categorical approach." *United States v. Ruska*, 926 F.3d 309, 311 (6th Cir. 2019). "That means we ask whether the conviction—disregarding its underlying facts—necessarily has 'the use, attempted use, or threatened use of physical force' as an element of the offense." *Id*.

The Supreme Court has defined the term "physical force" as "*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Harrison is correct that the complicity statute alone does not require the use of physical force. Harrison, however, was convicted of complicity to commit *murder*. The killing of another human necessarily requires the use of force capable of causing physical injury. *See Thompson v. United* States, 924 F.3d 1153, 1158 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2769, 206 L. Ed. 2d 941 (2020) (Because § 1111(a), by its plain terms, criminalizes the actual killing of another person, the level of force used must necessarily be capable of causing physical pain or injury.") "Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force." *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018).

Harrison argues that wanton murder can include killing by inaction such as starvation and dehydration. Even so, such killings are deemed to use force. "[I]t is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force." *Peeples*, 879 F.3d at 287. "It does not matter that the harm occurs indirectly as a result of malnutrition." *Id. See also United States v. Scott*, 990 F.3d 94, 112 (2d Cir. 2021) ("But a defendant can also manifest a knowing employment of violent force by acts of omission, as when he breaches a legal duty to check or redress violent physical force *because* he specifically intends thereby to have that force cause serious physical

12

injury."); *United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020) ("[T]here is just as much a 'use of force' when a murderous parent uses the body's need for food to intentionally cause his child's death as when that parent uses the forceful physical properties of poison to achieve the same result.") *United States v. Sanchez*, 940 F.3d at 535 ("'T]he intentional causation of bodily injury or death, even by indirect means such as withholding medical treatment or food, necessarily involves the use of physical force.")

Harrison points out that a person can be guilty of complicity to commit murder in Kentucky by engaging in a conspiracy with another person to commit murder or by engaging in a conspiracy to engage in conduct that causes murder. He argues that a defendant can be guilty of conspiracy when he simply "agrees and plans" with the principal, which requires no use of force. (DE 143, Mem. at 4.)

But engaging in a conspiracy that results in a *murder* requires force. As discussed, the murder cannot be accomplished without some force. To the extent that Harrison argues that a murder need not actually occur for a complicity-to-commit murder conviction, that is incorrect. By its plain language, subsection 1 of Ky. Rev. Stat. § 502.020 requires that there be "an offense committed by another person." "Complicity in burglary, for example, requires proof beyond a reasonable doubt that the crime of burglary was committed by someone other than the defendant. The requirement is for *commission* of the underlying offense . . . ." Robert G. Lawson & William H. Fortune, Kentucky Criminal Law, §§ 3-3(b)(2) (1998). "[T]he conviction of an accomplice is thus premised upon proof of the commission of the criminal act . . . ." *Id.* (citation omitted). *See also Rogers v. Com.*, 315 S.W.3d at 310 ("All that is required [for complicity by conspiracy] is that defendants agree to act in concert to achieve a particular objective and that *at least one of them commit that objective*.") (emphasis added).

13

As to subsection 2 of Ky. Rev. Stat. § 502.020, by its plain language it requires proof of the criminal *result*. It "is applicable only to 'result' crimes. It imposes no liability on conspirators for the non-result crimes of co-conspirators." Robert G. Lawson & William H. Fortune, Kentucky Criminal Law, §§ 3-3(c)(3) (1998). *See Clay v. Com.*, No. 2006-SC-000380-MR, 2008 WL 2167892, at *7 (Ky. May 22, 2008) ("A defendant can be guilty of complicity by engaging in a conspiracy which *results in a completed offense*. [Ky. Rev. Stat. §] 502.020(1)(a) and (2)(a).") (emphasis added). Thus, a conviction for complicity to commit murder where murder is the result of the principal's actions requires that a murder actually occur.

To the extent that Harrison argues that, for his conviction to qualify as "serious violent felony," he himself must have used the force, this also is incorrect. Under the plain language of the statute what matters is whether "the offense" for which Harrison was previously convicted "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C.A. § 3559(c)(2)(F)(ii). The Fourth Circuit rejected a similar argument, stating:

> [W]e are not persuaded by [the defendants'] contention that the ACCA's force clause requires proof that the defendant himself used the necessary force. There is no requirement that the defendant personally use force or threaten the use of force; it is enough that the crime [of] which the defendant was convicted has as an element the use or threatened use of force . . . To hold otherwise would suggest that one who was present aiding and abetting the commission of a crime requiring the use of force, but who did not himself exert any force, could not have committed a predicate offense under the ACCA. Also, such a flawed approach would come close to requiring us, contrary to settled law, to consider the specific conduct of a defendant rather than only the elements of the offense at issue.
>
> In this case, [the defendant] was convicted under North Carolina law of being an accessory before the fact of armed robbery. We previously have held that the offense of North

14

> Carolina armed robbery is a violent felony under the ACCA's force clause. *See United States v. Burns-Johnson*, 864 F.3d 313, 320 (4th Cir. 2017). Because a completed act of armed robbery is an element of the offense of being an accessory before the fact of armed robbery under North Carolina law, we conclude that [the defendant's] conviction of the inchoate offense is therefore a violent felony under the ACCA's force clause.

*United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019) (internal quotations and citation omitted). *See also Stuckey v. United States*, 224 F. Supp. 3d 219, 226 (S.D.N.Y. 2016) ("The statute's categorical language thus requires only that a violent felony be a felony that is violent, nothing more. It does not require that every participant in the felony employ violent force himself or herself, nor does it require proof of intent to use violent force as to each individual defendant.")

Thus, complicity to commit murder falls within the elements clause of § 3559(c)(2)(F).

## II. The Enumerated-Offense Clause

The government argues that the complicity conviction is also a violent felony under the enumerated-offense clause. Among the enumerated offenses is murder under 18 U.S.C. § 1111. So are the attempt, conspiracy, and solicitation to commit murder. 18 U.S.C.A. § 3559(c)(2)(F)(ii). Complicity to commit murder is not explicitly an enumerated offense. Nevertheless, the government argues that "complicity to commit murder" is simply a means of committing murder. *See KR v. Commonwealth*, 360 S.W.3d 179, 186 (Ky. 2012). Thus, the government argues, the Court need not determine whether Kentucky's complicity statute falls within the enumerated offense clause under § 3559(c)(2)(F). It need only determine if Kentucky's murder statute does.

Complicity to murder, however, has distinct elements from a murder conviction under Kentucky law. Thus, in determining whether Harrison's prior conviction for

complicity to murder falls under the elements clause of § 3559(c)(2)(F), the Court must compare the elements of that crime to the elements of murder under § 1111 (or the attempt, conspiracy, or solicitation to commit murder). In doing so, the Court must again employ the categorical approach, which requires the Court to consider Harrison's complicity-to-murder conviction generically, "that is, in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Elliott*, 757 F.3d 492, 494 (6th Cir. 2014) (internal quotations and citation omitted).

If a state statute sets out a single set of elements to define a single crime, and those elements criminalize conduct beyond what was intended by the federal statute, then a conviction under the state statute cannot serve as a predicate felony to enhance a defendant's sentence. *Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016). In other words, if the statute of conviction criminalizes more conduct than the federal statute referenced in the clause, then that conviction is not the same as the enumerated offense. *See Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018).

Under the federal murder statute, "murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C.A. § 1111(a). First degree murder includes any "willful, deliberate, malicious, and premeditated killing" and killings "committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery." *Id.* Any murder not defined as first degree murder is murder in the second degree. *Id.*

The statute that criminalizes complicity to commit murder under Kentucky law criminalizes more behavior than § 1111 and more than the attempt, conspiracy, and solicitation to commit murder under § 1111. For example, under both statutes, a defendant

16

can be held liable for a murder committed by another person. Under § 1111, however, a defendant is guilty of a murder committed by another person if the killing occurs while the defendant is perpetrating or attempting to perpetrate only certain enumerated crimes. Under Kentucky's complicity statute, on the other hand, a defendant can be held liable for a murder committed by another person for soliciting, conspiring with, or aiding that person with regard to any *conduct* that causes the murder. Ky. Rev. Stat. § 502.020(2).

Accordingly, a conviction for complicity to commit murder under Kentucky law does not categorically fall within the enumerated offense clause of § 3559(c)(2)(F)(ii).

For all these reasons, the Court hereby ORDERS as follows:

1) Harrison's prior conviction for complicity to commit murder under Ky. Rev. Stat. § 502.020 is a serious violent felony for purposes of 21 U.S.C. § 841(b)(1)(A)(viii) because it falls within the elements clause of 18 U.S.C. § 3559(c)(2)(F)(ii) and Harrison served more than 12 months in prison for the offense;

2) Harrison's renewed motion to strike the government's § 851 notice (DE 143) is denied; and

3) this matter is set for a sentencing hearing on **DECEMBER 15, 2021 at 4:00 p.m.** at Lexington, Kentucky.

This 21st day of October, 2021.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY